Welcome to the Fifth Circuit. We have three cases to be argued this morning and we'll start right in by calling the first case which is United States of United States of America, United States of America, United States of America, United States of America, United States of America, United States of America, United States of America, United States of America, United States of America. The jury instructions were confusing for lawyers to read and they're especially confusing for the jury to read. In any event, one thing is certain, if the jury, jurors, had followed each instruction they could not have convicted Cortinez or Piper. After all, there was no evidence of 500 grams of pure methamphetamine in this case. I presented a demonstrative exhibit to the clerk. Hopefully the clerk has been able to distribute it to the panel. On page 12 were most of the... What is your demonstrative exhibit? I'm sorry? What is it? Is it a charge to the jury? I have a charge to... It's the court's charge to the jury. Okay, I've got it here. And to give you some background, everything that's black and white, that's what was originally in the record. I have highlighted certain portions of it in either yellow highlighting or red highlighting, just to make some illustrations. And also I've put a couple of phrases of how it should have been written in blue font. So we've got black, red, blue, and yellow. That's correct. On page 12... Lucky we're not colorblind. Yes, that's right, Your Honor. On page 12... This, this, the entire argument is plain error because no objection was made to the jury charge? Yes, Your Honor. It's plain error. And as explained in Cortinez's brief, the use of the phrase defendant or co-conspirator, specifically the word co-conspirator, implied the existence of a conspiracy in this case and violated Carlos Cortinez's due process rights. Also, on the second element of the brief, it simply talks about methamphetamine alone. In other words, pure methamphetamine. Perhaps they intended, the government intended to say a mixture or substance containing a detectable amount of methamphetamine, but they didn't do that in this instance. And that caused confusion for a reasonable juror. In the record, significantly, there's no evidence that there were 500 grams of pure methamphetamine in this case. Certainly there is evidence of a mixture. Did you represent the defendant in trial? I did not, Your Honor. What's your strongest case? I mean, under, we're looking at the entire set of jury instructions, and if the district court told the jury you've got to keep each offense separately, why wouldn't that be sufficient on plain error review? They were presumed to follow the instructions. So this notion of an implied conviction on the conspiracy, what's your best case that that type of implication confused the jury here? Through combined error. No, I'm just asking you for your best case where a circuit court has found plain error, in spite of the instruction going to the jury, that they have to keep each count separate. There is no circuit case on that point, Your Honor. This is a case, a first impression. Are we reviewing this under plain error? Yes, Your Honor. So, plain error, and there's no circuit case to support you. That kind of ends your argument. I'm sorry, Your Honor. The U.S. Supreme Court, however, issued an opinion in Carrera v. California, so it would be plain error under Carrera v. California, because there's an implied presumption in this instance. Is that the case you submitted in the 28-J letter? No, actually that was Francis v. Franklin that I submitted in the 28-J letter. The Carrera v. California, I submitted in the opening report. So that's the best case that we have for plain error review in this instance. You're not starting off very fast if that's your authority, though. That's all you've got. Well, that's not the only error, plain error, that we have in this case. I mean, there's a number of other instances of plain error in this case. In this case, you also have, this is a non-offense under I.N. Illey v. the United States, and that's also a U.S. Supreme Court mention in Court Section 841A1, the object of the conspiracy, as the object of the conspiracy being a co-conspirator knowingly possessed a controlled substance. And then on the third element, a co-conspirator possessed a methamphetamine with the intent to distribute it. But what a co-conspirator may have known is not relevant to whether an 841 violation occurred. To make matters more confusing, on page 11 of your exhibit here, that's correct, on the demonstrative that Carlos Cordin has offered, it talks about alleged conspirators. But on page 12 of the demonstrative, they drop the modifier alleged. That also was confusing to the jury in this case. The errors in this jury instruction were also amplified by opening statements where the government, in this instance, said basically what you're going to hear is that there was an agreement, a conspiracy possessed with intent to distribute more than 500 grams of methamphetamine. The same statement was made in the prosecutor's closing statement. But you've got a red line. Thank you, Your Honor. All right. Thank you, sir. Ms. Catherine Donovan. Good morning to you. Please report. Good morning. Government brief at 6. Defendants did not present any evidence. What? Why wouldn't Piper exercise his right to compulsory process to secure the testimony of the one witness, the one witness, whose testimony would exculpate Piper, impeach Garza and Rosales, the only government's witnesses who could make an in-court identification of Mr. Piper as chrome guy, Rosales' big drug and only drug customer in Missouri. Eli would testify that Garza and Hernandez were not coming back from Piper's house with three pounds of methamphetamine that day. They were arrested. They were coming back from another dude that lives in Missouri, a high roller who goes through several keys a week, that Rosales was buying a truck from that dude and making payments in dope. That since Rosales has been in jail, his brother— Just a little slower. Who was in the conversation at the jail and when did the conversation occur? The conversation occurred sometime between February 21st and March 9th. Okay. And the conversation— And who was present? The conversation between Caracas Castle and Garza, they were present at that conversation. Overheard by Eli? Overheard. Okay. So what was the—when did the conversation occur that Eli overheard that he was going to testify to? Piper arrived at the FCI Fort Worth. Castle drew Piper's attention, drew him into an area where they looked at paperwork, which presumably was his PSR. Castle made those statements to Piper. Castle made the statements to Piper that Eli overheard? Yes. Okay. So at that point, right at the beginning, Piper was aware of Eli's presence and the statements Castle had made that Eli overheard? There's no evidence in the record that says he was aware that Eli overheard until later. I mean, we have a statement, a handwritten statement from Eli. So at some point, Piper became aware that Eli heard this conversation. And the latest would be when he receives the note? Absolutely. Okay. And so between that point and when you requested Eli's presence at trial was how much time? I wasn't the trial attorney. Oh. It's my understanding from the record that Piper handed his trial attorney this statement from Eli on March 9th. Subsequent to that, he was transferred to a different jail facility. Trial counsel visited Piper at the other jail facility, reviewed this statement with him, checked the veracity of it, and then made arrangements to speak to Castle or contact an attorney for Castle and for Eli. Castle's attorney did not give Mr. Piper's statement. Just because your time is limited since you split. Could you give me the record site to say the clearest objection based on compulsory process? When, at any point, pretrial, during trial when you're trying to get Castle's testimony in, at sentencing when the new trial motion is decided, when did predecessor counsel say, we have a compulsory process objection? He didn't specifically say that, but by the record, it shows that he made his position clear. When you say by the record, in the reply brief, you cited the sentencing transcript where the new trial order was denied. Is that the clearest objection? No, sir. What's the clearest objection that you think the district court should have understood it was a constitutional objection based on the compulsory process? When did it most clearly get made? In his motion to continue trial. Okay. In the motion to continue trial. Yes, sir. But early in the trial transcript begins with the seating of the veneer panel. There was no pretrial hearing. When the district court asked Piper's attorney to introduce his witnesses or to ask the jury whether they were familiar with, he attempted to approach the bench. The judge had nothing to do with that. That's when he wanted to make that. It appears that's when he wanted to make it clear to the judge that he wasn't afforded the compulsory process to obtain Eli. And then after jury selection is when he raised the issue of the motion to continue, and the judge says, oh, you had a motion to continue? That's the first the judge would say. Is your argument to us now that the two are indistinct, in that the motion to continue, the arguments are identical to the compulsory process ones? That the abuse of discretion occurred in denying the continuance? Is that your stronger argument, I guess, is my question? Because that's clearly preserved. Yes. That would be, I believe it's all intermingled. Every motion, the motion for new trial, the writ of habeas corpus, the district courts issued the AS, ordered the government to issue the ASR to order the United States Marshal to produce Eli for court. That made it pretty clear that Eli was an important, material, and favorable witness. The government did not comply with that order. They didn't produce Eli for court. And their argument was, at every level, was that he wouldn't be competent anyway, which is against the rules of evidence. Every witness is presumed to be competent. But they also claim it's inadmissible. Inadmissible. Well, it would have been had Castle not invoked his Fifth Amendment right. Castle invoked his Fifth Amendment right against self-compelled incrimination. Compelled self-incrimination. At that point, Eli became Piper's only material and favorable witness. And was it against penal interest? Well, the district judge thought so because he asked him, well, Mr. Castle, what's your intention if the lawyers ask you about the drug activity in this case? Even if statements were against Castle's interests, there would have to be clear corroboration as to the trustworthiness of this jailhouse conversation, correct? Yes, and certainly there was. How would Eli know anything? He's from Midland. He's completely unrelated to this. How would he know such intricate details as they weren't coming back from Piper's house? What's your strongest case on Williamson that this would have been admissible 804 evidence? What's your strongest case? The one I cited, and I don't have it in the top of my head. I could look for it, but I'm down to eight seconds, but it is in the brief, Your Honor. May it please the Court, John Pelletier on behalf of the United States. To turn to Your Honor's question about at what point any compulsory process claim was raised in the district court, the answer is it was never raised, any kind of constitutional violation. And the Constitution was never invoked in the context of this motion for a continuance or the motion for a writ to obtain Eli's testimony. If you look at the motion for a continuance, Mr. Piper actually invoked the standard under the Speedy Trial Act, erroneously invoked that standard, which really only pertains to whether the district court should exclude time from the speedy trial clock. There was no invocation of the Sixth Amendment and the compulsory process rights. There was also no invocation in the post-trial in the motion for a new trial. Again, at that point, the defendant just said, raised the interest of justice. But from start to finish, they were saying we only have two witnesses. It's the people that said that we were all framed by Rosales. So pretrial, and then voir dire to the jury, and then they're desperately trying to get Castle in. Then they're desperately trying to get Castle's Fifth Amendment. They got no other witness. Then the new trial motion says we had to get the guy. The district court says you ought to get the one witness that will say you're framed. And it's somewhat extraordinary that this witness actually put into writing. That's a little bit unusual. Jailhouse snitch conversations seem unreliable. But Eli put it all in writing that it was a big frame job. So it seems pretty obvious to a district court that this is an objection to we need the one man that can exculpate us. Well, we agree that he preserved an objection or he preserved his claim that there was an abuse of discretion for a continuance. I mean a continuance to obtain the presence of a witness occurs and is generally viewed for an abuse of discretion. It's not always evaluated as a compulsory process claim. I'm just saying given start to finish here, everyone knew what they were saying, which is we need the service to compel the one person. I mean they even told the jury you're going to hear from this guy. Correct, Your Honor. And the government was under no misapprehension because the government is trying to get him too. Yes, Your Honor, but there was no suggestion that this in any way triggered any constitutional protections. But even if you were to review, even if you were to – If we assume it's preserved. If you assume it's preserved, there's still no violation of the compulsory process clause for a number of reasons. Number one, a compulsory process violation requires a showing that the anticipated testimony would have been material. There has to be a reasonable probability that if the jury had heard this testimony, it would have reached a different outcome at the trial. Is that distinct from a harmlessness answer? Is that saying there was an error, but it's harmless? Well, I think it's intermixed with it. It's kind of when you have – for example, it's like a Brady claim where it's part of the actual substantive constitutional violations of materiality, which in some ways overlaps with a harmless – It wasn't the frontal argument you made the district court. You made the argument, well, this guy is not competent. It turns out he ends up being competent. But it was a secondary argument that if he were competent, it would be inadmissible. We didn't make the argument that he was not competent at all to testify. We made the argument that his competency was under question, and that was one aspect for the court to take in its exercise of discretion. We did take the position that his testimony, his proposed testimony, would be inadmissible under the hearsay rules because it was not a statement against interest. We're talking about Castle. Castle's the declarant. The inquiry is whether it would be against Castle's penal interest. Yes. And he did take the fifth. Yes, but you have to look at the actual substance of the statements, the contents of the statements. Well, we don't look at the substance of the overall statement. We look at sentence by sentence, right? Well, if you look at what Eli would testify to about Castle's statements. Yes. And you look at those statements. But we'd have to go through and conclude every single statement attributed to Castle isn't against his penal interest. I think that's correct, Your Honor. Okay, and the government's position here is in that long recitation. There wasn't anything that Castle said that was against his penal interest. No, and here's why, because what Castle said, according to Eli's recitation, is that, Look, I went and spoke to Garza, and Garza told me that he framed you, Piper, that Rosales and Garza were framing Piper by claiming that this guy, Turner, was actually Piper. That doesn't implicate Castle in any kind of crime. He's saying that Castle spoke to Garza, who admitted to framing Piper. The government wouldn't seek to introduce that at trial. I thought the larger statement was Castle's talking all about his involvement in the meth conspiracy. No, Your Honor. He's saying that I spoke with Garza, and I confronted him because I said, You set me up. Castle is saying, You set me up, which is not in any way incriminating toward Castle. And then Garza went into this whole spiel about setting up Piper. That wouldn't be something we would use against Castle at a trial against Castle. And simply because he invoked his Fifth Amendment right later doesn't make those statements in any way incriminating. Obviously, he pled guilty to a drug conspiracy. So if he was going to be questioned about his involvement in that, he can invoke his Fifth Amendment right. What we have to look at are the statements that Castle supposedly made to Piper in prison that Eli supposedly overheard. And those statements, we simply would not use those against Castle at a trial. It's not similar to the statements in Thomas, for example, which is a case that the defendant raised, where there were three individuals charged with robbing a bank, and one of those individuals said, Oh, you shouldn't – you should drop the charges. Basically, you should drop the charges against this other guy, Bill, because he had nothing to do with it. Well, that suggests that the person who made that statement did have something to do with it. There's no analogous statement by Castle suggesting he had any involvement in criminal activity. If you read line by line Eli's handwritten document, it simply says that Castle confronted Garza about a supposed setup, and then Garza told Castle all this information about Piper. Again, that would not be admissible. But even if you were to assume that it would – Do you agree with the description of who, what, and when in terms of who was around that conversation and when it occurred, which goes to when Piper would have known about the Eli note or the Eli information? As we understand it, Piper was taken into custody for a detention hearing somewhere in February, March of 2015, I believe. And during that period of incarceration, as we understand the record, that's when this conversation with Castle occurred that Eli overheard. So it was in February, March. I guess so. We don't know if Piper knew that Eli overheard it. I don't know that that's in the record. The reason that's relevant would be at that very moment Piper would know Eli is a pertinent witness. I don't know that that's in the record. Okay. We have the note. We have the statement by defense counsel that he obtained the note at the detention hearing on March 9th. And at that point, certainly, defense counsel was on notice, and there was not a motion for a writ until a week later on March 16th. But even if you were to assume that these statements were admissible as a statement against interest, they're still not material because the defendant – for a few reasons. Number one, they contradict substantial evidence in the record. This notion that Piper had nothing to do with this drug conspiracy and it's just some fall guy that was picked out of thin air because Cortinez had been dropped off by his girlfriend just doesn't stand up to all the phone records in this case, for example. You have phone records between Cortinez and Piper on in September when that delivery was made, many phone calls. You have phone calls between Garza and Piper. You have phone calls between Rosales and Piper. That is totally inconsistent with this notion of Piper being picked out of thin air. That's just a harmlessness argument. They at least get to have Ely come, and then you can rip him up and cross-examination. Well, I think when you look at materiality, when you look at whether a jury presented with these statements, there's a reasonable possibility – a reasonable probability, not just a possibility – a reasonable probability that the jury would have reached a different outcome. You look at the whole record. If you look at the Supreme Court decision where this derives from, the Valenzuela-Bernal decision, it discusses this in the context of deriving from Brady this materiality standard. So when you look at whether there's a reasonable probability that the outcome of the trial would have been different had the jury been presented with this potential testimony, you look at the whole record. And so that includes these phone records, which are totally inconsistent with this note from Ely of what he overheard in his testimony about Castle's statements. You also should take into account the potential reliability and credibility of Ely as a witness. And at the time he heard this, he was under evaluation for competency, and so there were questions about his mental stability at the time. You have the notion that, in addition, the defense counsel had an opportunity, an opportunity to cross-examine Garza about this supposed meeting and conversation with Castle. Did defense counsel cross-examine? Yes. Did they offer the note to refresh Garza's memory? No. So the defense counsel could have taken a few different avenues to really try to flesh this out, but he stopped really. He said, Have you had a conversation with – this is to Garza. He said, Have you seen Castle in jail? Garza said, Yes, I have, once or twice. And he said, Did you have a conversation with him? Yes, I did have a conversation with him. That's what Garza admitted to having, a conversation with Castle in prison. He said for maybe one or two hours they spoke to each other. And he said, Did you talk about this case? And he said, No, not specifically. He wanted to see my paperwork. And then he said, Did you talk to him about setting up other people in this case? And he said, No. And then the defense counsel stopped. And so he had an opportunity to continue other paths of inquiry along these lines and had a full opportunity to try to flesh this out with Garza. So if you take into account, number one, the – But all these different arguments, they're irrelevant if we find it wasn't preserved because they go to one of various prongs under plain error. No, I think it's – But that last argument would have nothing to do if we have de novo review, if we find they preserved the compulsory process claim. So we're just – correct or no? No, even if you review de novo, these are relevant because you have to show materiality. Materiality is just capability of influencing. There's materiality. And then you could also evaluate it under the countervailing interest. So when you look at a compulsory process claim de novo – What do you tell us is the best compulsory process claim case if not plain error? If we're just assessing where a defendant pretrial is asking to have witnesses, tells the jury they're going to hear witnesses, the government is told go get the witness, and then the witness hasn't gotten there, what's the best case that describes how we do a compulsory process analysis? There's a few. I would say that – What's your best one? What's the most – Markman – in this case, there's Kahn. In this court, there's Kahn, which is a little bit older than some of these more recent cases. Kahn looks to – but it's not – Kahn is a little different in that it wasn't a witness that the government – that was incarcerated. That's crucial because the cases you cite are, well, government acted in good faith. It didn't impede your ability to go get someone out there in society. It told you where he was. I would like a case where the government's got the guy in jail, so the only person that can get him is the government, but then they don't. Sparkman and DeColigaro, Your Honor. And in those cases, you had prisoners, and the Sparkman is an Eighth Circuit case. DeColigaro is a First Circuit case. You had prisoners who were in the custody of the United States. A defendant asked for them, and there simply was not an opportunity to get them there in time for trial. And the courts evaluated these under abusive discretion under various – and took into account the strength of the evidence. So in Sparkman, the court looked at what would the probative value of this evidence be and why was it – it wasn't really a timely request because he asked, I think, two weeks before trial to get this individual. In DeColigaro, it was during trial, but there was two days before I think the defense case was going to go on. And the district court, as in this case, ordered the marshal service to get the witness. And the marshal service said, we just can't get him there in two days. And the defendant said, well, Judge, you've got to order them to get him there quicker. And the judge said, no, I'm not going to do that. So due diligence is baked into the compulsory process clause? Absolutely, Your Honor. First you look to materiality. That's a necessary requirement. And then even if there's materiality, there's this notion of countervailing interests. Integrity of the process. Integrity of the process. And that's where you get due diligence. You look to the general circumstances of whether there is – The court here could have continued, at least to find out if Healy is culpable. Well, in any case where you have a denial of continuance, the court could have continued. And that's why a court has to exercise its discretion and evaluate all the circumstances. And that's why this is really evaluated under an abuse of discretion standard because the district court is really in the best position to weigh all of these circumstances and to determine whether due diligence and materiality and probative value and how all these things intermix to justify a continuance in a particular case. From your point of view, what is the precise reason that the witness was not produced? Because the marshal service went to the Bureau of Prisons and said we need to bring this guy Eli to testify. And at that moment in time, he was in the custody of the Bureau of Prisons pursuant to an order from the Western District of Texas putting him in the custody of medical professionals in the Bureau of Prisons for a competency evaluation. So those medical professionals told the marshal service we can't give him to you. We can't give him to you unless, number one, the competency evaluation is finished or the judge in the Western District of Texas says we can give him to you. All right. Now to what extent was the judge's decision based upon his lack of confidence in the credibility of this witness, the credibility of the story that he was telling? Well, the district judge said I deny the continuance on the grounds raised by the government, and we raised those specific issues. We said that there's very— That's all the district court said. The district court said if you look at the ruling, it said— I mean, did it evaluate the credibility of the witness's story as part of its denial of the motion to continue? The district court did not specifically discuss the credibility, but it agreed with the government's reasoning, and that's why the court denied— And what was the government's reasoning, one, two, three? Excuse me, Your Honor? What was the government's reasoning, one, two, three? Well, number one, the government said that Eli's testimony would be inadmissible under the hearsay rules, and then the government also said that there were real problems with Eli's credibility and reliability because of his competency questions at the time that he overheard these issues. And there's also— So he bashed credibility solely on the basis of competence? Well, our argument was that he—given the circumstances that he was—his competency was questionable at the time he overheard this, and the overall circumstances of where he overheard these questions in prison and the general circumstances and setting, there were real questions as to the reliability and credibility. And that's relevant in two areas. Number one, you look to general materiality, whether this testimony, if there were credibility and reliability issues, would have tended to influence a jury. But you also look at it through the lens of the—through the statement against interest because even if you assume that these statements were against Castle's penal interest, the defendant also has to show that there were indicia of trustworthiness. And here, in the general circumstances of this case, when you look at Castle being in prison and when you look at him basically passing off culpability to someone else and claiming a cover-up or a set-up, all of those strongly suggest that these statements lack an indicia of reliability or trustworthiness. And the only basis that we have to conclude that the district court's judgment was based on that consideration, among others, is that you made those arguments before him? Yes, we made those arguments. And that's the only basis that we have to conclude that that was part of his rationale. Yes, he adopted the reasoning of the government. That's both in our written motion and our oral presentation at trial, which is at 2079 of the record. And the court said, okay, I agree. I will deny the motion for continuance for the reasons that you have stated and you have stated in your response. And so the district court adopted the reasoning of the United States, both written and orally. At a broad level, it certainly doesn't look good when the one person that's willing to write down that the defendant's refrained, the government happens to have and won't get because the government says he's got competency problems. Well, Your Honor, we made good-faith efforts to produce him. We produced Castle at trial. Did they get Castle's Fifth Amendment in front of the jury? Did they get that in front of the jury? No, it was – I know he took the Fifth, but then they tried to get the fact that he took the Fifth. I believe that the district court referred to it to the jury after he actually invoked his Fifth Amendment outside the presence of the jury. So I believe there was a reference to it by the district court. But for all the reasons we've discussed, whether it's plenary review or whether it's de novo, there was no compulsory process violation in this case, and we'd ask that you affirm. Thank you, Your Honor. Thank you, sir. In sum, as this court stated fairly, a jury instruction must correctly state the law, must clearly instruct the jurors, and it must be factually supportable. In this case, the jury instructions don't meet any of those criteria. As I explained in the briefs and earlier, Corrella v. California, Iannelli v. United States, it is plain error what was done to the jury instructions in this case. On top of it, it was plain error under Section 841A1. Thank you, Your Honor. Thank you, sir. March 9th, Piper gave Eli a handwritten statement to counsel in court. March 14th, counsel was able to communicate with Castle and Eli's attorneys to get permission or not permission to interview their clients. March 16th, counsel meets Eli at the other jail, confirmed that Eli had handed him this note. March 16th, Piper filed applications for writs of habeas corpus ad testificandum for Castle and Eli, both of whom were housed locally at the FCI Fort Worth. March 17th, the district court, sua sponte, issued an order to the government to issue ASR's attorney's special request, ordering the marshal to bring Your predecessor counsel was absolutely diligent. As soon as they realized they wanted Eli, they requested him. That's your position. My position is it's not easy to get in and out of the FCI Fort Worth. Those are just logistical things, and I know that only because I . . . That sounds convincing to me. So then it still comes . . . it is a big concern of mine that the district court was never told we have a compulsory process objection here. It was so much focus on Castle. Admittedly, Castle doesn't take the Fifth till late. But even when Castle does take the Fifth, as I read the record, the court is never told that we have a compulsory process argument here. Instead, there's an apology that they're asking for a late continuance. Well, he filed the writ, applications for writs. Yeah. Isn't Piper entitled to rely on the district court's order? Yeah. But what case would you say that filing for an application of writ preserves a compulsory process claim? It was the totality of the circumstances. Okay. It's one. No, I understand. Yeah, that's right. You go ahead with your arguments. Yes, sir. The case is United States v. Jackson. Every person is competent under Rule 601 to be a witness unless these rules provide otherwise. The right to offer testimony of witnesses and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present a defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. Washington v. Texas. What one—you heard him state that every single sentence attributed to Castle was blame-shifting. None of it was against penal interest. Put aside that he took the fifth. Quote me the sentence in the E. Lee note that is incriminating to Castle. Your Honor— No, just quote me the one proposition that is most incriminating. His knowledge of what really happened in Missouri. His knowledge. Yes. Okay. His claim that they didn't—they weren't coming back from Piper's house. They were coming back from the other dudes. He took the Fifth Amendment. Nobody argued against it. The government didn't ask him, didn't say, well, wait a minute. If all you're going to do is relate what Garza told you, then you don't have a Fifth Amendment claim. You can't claim privilege. Thank you, Your Honor. Thank you. Counsel, Ms. Donovan and Mr. Ebaugh, you were a court opponent to represent the defendants in this case, and the court thanks you for your service to the court and to the public. Next case.